BOUTALL, Judge.
This is an appeal from a summary judgment rendered in favor of the defendants in a tort suit brought by a tenant against his lessors.
Frank W. Savoy (“Savoy”) was injured on June 4, 1982, when the ground gave way beneath him in the yard of a home he rented from Diane DeLaup (“DeLaup”) and Enrique Carvajal (“Carvajal”). The hole was located near a shrub at the edge of the lawn and was caused by the rotting of a stump underneath the surface soil of the yard. Savoy filed suit on July 21, 1982, *1210 alleging the landlords were negligent in failing to keep the premises in reasonable and proper condition, failing to inspect, failing to remedy defects and vices, and failing to warn of the condition of the premises. Summary judgment was rendered in favor of the defendants on December 23, 1982. This appeal followed.
The question before this court is whether summary judgment was appropriate. La. C.C.P. article 966 provides that summary judgment shall be rendered when:
“... The pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.”
The adverse party is required by article 967:
“... by affidavits or as otherwise provided above, ... [to] set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.”
The motion for summary judgment here submits the lease along with affidavits of Carvajal and DeLaup which deny prior knowledge of a hole or depression. The lease is a printed lease form signed by Mr. and Mrs. Savoy and by DeLaup. It contains a clause in which the lessee accepts the premises in their present condition, except for specified repairs, and the lessee agrees to keep the premises in the same condition. The lease further contains an exculpatory clause, as follows:
“Lessee assumes responsibility for the condition of the premises and Lessor will not be responsible for damage caused by leaks in roof, by bursting of pipes by freezing or otherwise, or by any vices or defects of the leased property, or the consequences thereof, except in case of positive neglect or failure to take action toward the remedying of such defects within reasonable time after having received written notice from Lessee of such defects and the damage caused thereby. Should Lessee fail to promptly so notify Lessor, in writing, of any such defects, Lessee will become responsible for any damage resulting to Lessor or other parties.”
An additional provision typed at the end of the lease states that the lessee assumes responsibility for maintaining the lawns and shrubbery. We note from the lease, and from the excerpted depositions of De-Laup and of Carvajal, submitted in opposition to summary judgment, that the lease was a renewal lease. The defendants first bought the property in March, 1980 and Savoy first rented the premises sometime before December 1,1981, when the renewal term was to begin.
The plaintiffs memorandum in opposition to summary judgment relies on the excerpts from the two defendants’ depositions. Carvajal stated that he had checked the yard on only a few occasions: once in March, 1980, once in November, 1980, and once or twice in the early part of 1982. The purpose of his November, 1980 inspection prior to Savoy’s tenancy was to determine whether any work was needed to clean up from the previous tenants, such as removing debris or trimming shrubbery, or if the previous tenants had made holes in the ground which needed filling. He discovered no holes or weak surfaces. He had not seen the stump before and knew not how it came to be there. When questioned about the later inspections, Carvajal responded:
“I don’t know the specific dates but they were sometime in the early part of 1982. Of this year. With Wayne [Savoy], and I looked over the back yard and front part of the property and agreed that some kind of filling of the lot was needed because apparently the property had not been filled in a long time. So we felt it was due time due to the natural sinking of the land in the outlying areas of the city that we put some good soil down and build the property back up.”
He testified further that no filling was done in the back yard, only along the perimeter of the house itself. That filling *1211 was accomplished in May, 1982, about a month before Savoy’s accident.
The plaintiff first argues that a landlord is strictly liable for damages resulting from a defect even though he may not be aware of such defects. The cases cited are based on LSA-C.C. 2322, regarding the liability of a building owner. As the jurisprudence clearly holds that this article applies only to structures, we find his argument to be without merit. Loescher v. Parr, 324 So.2d 441 (La.1975).
The liability of a landlord for damages to his tenant from defects of the premises is governed by LSA-C.C. art. 2695, which states:
“The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.”
However, LSA-R.S. 9:3221 allows the parties to contract for the lessee to assume liability, as in the lease signed by Savoy. The statute provides:
“The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.”
Our examination of the affidavits, excerpts of depositions, and arguments of counsel at the hearing reveals the undisputed fact that a hole was not visible at the time the lease was confected. Also that neither Carvajal nor Savoy detected a problem when they walked around the premises together in 1982 and determined some fill was needed in certain areas of the yard but not in the back yard. The fill was added in May, 1982, only around the edge of the house. As Savoy had assumed specific responsibility for the lawn and shrubbery, the applicable law is that quoted in LSA-R.S. 9:3221 and the owner is not liable to the lessee. The relevant facts are that Carvajal neither knew nor should have known that a defect existed under these circumstances. Under the factual situation presented, we cannot conclude that the owner is responsible merely because he inspected the premises occasionally or repaired the premises earlier.
Accordingly, we find that the terms of the lease prevent the lessee from recovering from this particular accident. As the plaintiff, Savoy, has not shown that there is a genuine issue of relevant fact, we hold that the trial judge was correct in rendering summary judgment in favor of the defendants, Carvajal and DeLaup, and affirm.
AFFIRMED.